IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

**ROBERT LEE HINSON, JR.,**
        **Petitioner,**

**v.**                                                                 **Case No. 3:10cv480/RV/MD**

**KENNETH S. TUCKER,**
        **Respondent.[1]**

_____

## REPORT AND RECOMMENDATION

        This cause is before the court on petitioner's petition for habeas corpus filed pursuant to Title 28 U.S.C. § 2254 (doc. 1). Respondent filed a response and relevant portions of the state court record (docs. 32, 35-38, 44). Petitioner filed a response (doc. 47). The matter is referred to the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636 and N.D. Fla. Loc. R. 72.2(B). After careful consideration of all issues raised by petitioner, it is the opinion of the undersigned that no evidentiary hearing is required for the disposition of this matter, Rule 8(a) of the Rules Governing Section 2254 Cases in the United States District Courts. It is further the opinion of the undersigned that the pleadings and attachments before the court show that petitioner is not entitled to relief, and the petition is without merit and should be denied.

_____

[1] Kenneth S. Tucker became Secretary of the Florida Department of Corrections on August 24, 2011, and is substituted as the respondent.

## BACKGROUND AND PROCEDURAL HISTORY

The petitioner, Robert Lee Hinson Jr., was charged with several crimes in the Circuit Court of Escambia County, Florida, in 2007 and 2008 (*see* doc. 35, ex. H).[2]  At issue is the charge of burglary of a conveyance in case number 2007 CF 5153 ("case 5153") and the charge of felony petit theft in case number 2008 CF 402 ("case 402").[3] (*Id.*).  Mr. Hinson moved to waive his right to counsel and represent himself in both cases (ex. F, p. 18).   The trial court granted the motion after holding a *Faretta*[4] hearing on March 25, 2008 (ex E, pp. 86-107).  On the burglary charge, Mr. Hinson entered a plea of guilty to the lesser included offense of trespassing.  (Ex. A, pp. 39-44) (case no. 2008 CF 5153).  The court sentenced him to nine months in jail with nine days of credit time (Ex. A, p. 50). He was tried by jury and adjudicated guilty of felony petit theft on July 2, 2008.  (Ex. F, p. 135) (case no. 2008 CF 402).  The court sentenced him to a term of five years imprisonment with 225 days of credit time (ex. G, pp. 183-89).

Mr. Hinson appealed the convictions and sentences in cases 5153 and 402 to the First District Court of Appeal ("First DCA") (exs. A, p. 70; G, p. 208).  The First DCA consolidated the appeals (ex. D, p. 77).  Through counsel, Mr. Hinson raised one issue: the trial judge erred in not conducting an adequate *Faretta* inquiry (ex. D).  On July 13, 2009, the First DCA *per curium* affirmed the convictions and sentences without written opinion.  *Hinson v. State of Florida*, 14 So.3d 1007 (Fla. 1st DCA 2009) (Table).  A motion for rehearing was denied (ex. H, dkt. Aug. 25, 2009).

Mr. Hinson filed numerable motions and appeals in the state trial and appellate courts.  On January 21, 2009, he filed a motion to correct the sentence in case 402

---

[2]  Hereafter all references to exhibits will be to docs. 35-38 unless otherwise noted.

[3]  Mr. Hinson's petition only challenges the conviction and sentence in case 402, but the central issue of the adequacy of a competency hearing potentially affects case 5153 as well.

[4]  *Faretta v. California*, 422 U.S. 806, 835, 95 S. Ct. 2525, 2541, 45 L. Ed. 2d 562 (1975) (accused must "knowingly and intelligently" waive representation).

based on the Florida speedy trial rule (ex. I, p. 1).  The trial court denied the motion on February 6, 2009 (ex. I, p. 4).  The First DCA affirmed the decision on May 14, 2009, and issued the mandate on July 1, 2009.  *Hinson v. State of Florida*, 10 So.3d 365 (1st DCA 2009) (Table) (docket at sxs. J, HH).

On August 13, 2009, Mr. Hinson filed two virtually identical petitions for writ of habeas corpus seeking a belated appeal.  The first challenged the June 9, 2008, hearing on his motion to dismiss the charges in case 402, stating the information was impermissibly vague, and his appellate attorney failed to appeal "the hearing[.]" (Ex. K).  The second challenged the portion of the August 11, 2008, hearing pertaining to case 402 (ex. M).  At that hearing, the trial judge denied Mr. Hinson's post-trial "motion for judgment of not guilty" and "motion for a cross bill of information", which Mr. Hinson stated was similar to a motion to dismiss the charges.  (*See* ex. F, p. 168).  The First DCA *per curiam* denied both petitions by separate opinions issued on September 17, 2009 (exs. L, N).

On August 17, 2009, Mr. Hinson filed a petition for writ of habeas corpus with the First DCA contending the trial court lacked subject matter jurisdiction in case 402 because the information was defective (ex. O).  The First DCA denied the petition without written opinion on September 17, 2009 (ex. P).

On August 25, 2009, he filed another petition for writ of habeas corpus with the First DCA, this time alleging ineffective assistance of appellate counsel for failing to "appeal" the June 9 and August 11, 2008, hearings and the trial court's order denying  a motion to disqualify the judge (ex. Q).  The First DCA denied the petition on the merits on September 29, 2009 (ex. R).

On October 13, 2009, Mr. Hinson filed a petition for writ of habeas corpus with the Florida Supreme Court arguing the trial court was "obligated" to order a mental health evaluation based on the March 25, 2008 *Faretta* inquiry (ex. S).  The Florida Supreme Court transferred the petition to the Escambia County Circuit Court for consideration as a motion for post-conviction relief on February 8, 2010 (exs. T; X, p. 29).  While that motion was pending, Mr. Hinson filed a Rule 3.850 post-conviction

motion raising four grounds for relief (ex. U, p. 1).  On August 25, 2010, the Rule 3.850 court denied both motions in a written opinion (ex. U, p. 12).  Mr. Hinson appealed (ex. LL), and the First DCA *per curiam* affirmed the Rule 3.850 court's decision on November 10, 2010 (ex. KK, dkt. Nov. 10, 2010).

On March 15, 2010, while the Rule 3.850 motions were pending, Mr. Hinson filed a motion to correct illegal sentence pursuant to Rule 3.800(a), Florida Rules of Criminal Procedure, alleging the trial court did not have subject matter jurisdiction in case 402 because the statute Mr. Hinson violated lacks an enacting clause (ex. V, pp. 1-30).  He filed another Rule 3.800(a) motion on July 27, 2010, raising three additional grounds for relief (ex. V, pp. 31-41).  The Rule 3.800 court denied both motions on the merits on August 25, 2010 (ex. V, pp. 42-43).  Mr. Hinson appealed (ex. II), and the First DCA *per curiam* affirmed the Rule 3.800 court's decision on November 10, 2010 (ex. JJ).

On August 13, 2010, Mr. Hinson filed three pleadings—a petition for writ of habeas corpus to the Florida Supreme Court, a petition for writ of prohibition to the Florida Supreme Court, and a petition for writ of prohibition to the First DCA—alleging the trial court lacked subject matter jurisdiction in case 402 because the statute under which he was charged does not have an enacting clause and is therefore not a valid law.  (*See* exs. W, Y, AA).  The Florida Supreme Court transferred the petition for writ of prohibition to the Jackson County Circuit Court, where Mr. Hinson was imprisoned (ex. Z).  That court dismissed the petition on October 6, 2010.   (Case no. 2010 CA 827) (docket available at http://www.jacksonclerk.com).  The Florida Supreme Court transferred the petition for habeas corpus to the Escambia County Circuit Court (ex. FF, dkt. # 267), which denied the petition on November 5, 2010 (*id.*, dkt. # 282).  He appealed to the First DCA (ex. MM), and the court affirmed the trial court's order denying the petition on

March 14, 2011 (ex. NN).  The First DCA dismissed the petition filed in its court on November 19, 2010, due to Mr. Hinson's motion for voluntary dismissal (ex. BB).[5]

Mr. Hinson filed another petition for writ of prohibition with the First DCA on August 25, 2010, again raising the issue of the trial court's failure to order a mental competency evaluation (ex. DD).  The court denied the petition on October 29, 2010 (ex. EE).[6]

On November 23, 2010, Mr. Hinson filed the instant petition for writ of habeas corpus (doc. 1).

## STANDARD OF REVIEW

Federal courts may issue habeas corpus relief for persons in state custody pursuant to 28 U.S.C. § 2254, as amended by the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA").  Pub. L. 104-132, § 104, 110 Stat. 1214, 1218-19.  In relevant part, § 2254 provides:

> (d)  An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> (1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

---

[5]  Mr. Hinson continued to file petitions for writ of habeas corpus and post-conviction motions with the Circuit Court of Escambia County throughout 2011.  (Case no. 2008 CF 402) (docket available at http://www.escambiaclerk.com).  On October 10, 2011, the court cautioned him regarding "frivolous and repetitious filings" (*id.* at dkt. # 312).

[6]  The First DCA issued an opinion on January 6, 2011, imposing sanctions.  (Ex. CC).  It stated he had "appeared as appellant or petitioner in [the] court 58 times since 1995[,]" and none of the filings resulted in the granting of any substantive relief.  (*Id.* at 2).  It prohibited him from appearing as a litigant before the court unless represented by counsel.  (*Id.*).

28 U.S.C. § 2254(d) (2006).

The United States Supreme Court explained the framework for § 2254 review in *Williams v. Taylor*, 529 U.S. 362, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000).[7]  Section 2254(d)(2) must be divided into two separate inquiries:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Id.*, 529 U.S. at 412–13 (O'Connor, J., concurring).  The federal habeas court "determining whether [it] should overturn the state courts' [sic] rejection of the claim at issue" should "review the highest state court decision disposing of the claim." *Harvey v. Warden, Union Corr. Inst.*, 629 F.3d 1228, 1237 (11th Cir. 2011); *see Knowles v. Mirzayance*, 556 U.S. 111, __, 129 S. Ct. 1411, 1419, 173 L. Ed. 2d 251 (2009).

Following the *Williams* framework, on any issue raised in a federal habeas petition upon which there has been an adjudication on the merits in a formal state court proceeding, the federal court should first ascertain the "clearly established Federal law," namely, "the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-72, 123 S. Ct. 1166, 1172, 155 L. Ed. 2d 144 (2003).  The law is "clearly established" only when the Supreme Court's holding embodies the legal principle; dicta in opinions is not controlling.  *Thaler v. Haynes*, __ U.S. __, 130 S. Ct. 1171,

---

[7]  Unless otherwise noted, references to *Williams* are to the majority holding, written by Justice Stevens for the Court (joined by Justices O'Connor, Kennedy, Souter, Ginsburg, and Breyer) in parts I, III, and IV of the opinion (529 U.S. at 367–75, 390–99); and Justice O'Connor for the Court (joined by Justices Rehnquist, Kennedy, Thomas, and—except as to the footnote—Scalia) in part II (529 U.S. at 403–13).  The opinion of Justice Stevens in Part II was joined by Justices Souter, Ginsburg, and Breyer.

1173, 175 L. Ed. 2d 1003 (2010); *Bowles v. Sec'y for Dep't of Corr.*, 608 F.3d 1313, 1315 (11th Cir. 2010).  Furthermore, a federal court of appeals decision, "even a holding directly on point," cannot clearly establish federal law for § 2254 purposes. *Bowles*, 608 F.3d at 1316 (citing *Renico v. Lett*, __ U.S. __, 130 S. Ct. 1855, 1866 (2010)).

    After identifying the governing legal principle, the court determines whether the state court adjudication is "contrary to" clearly established Supreme Court case law, either because the state court "applies a rule that contradicts the governing law set forth in [Supreme Court] cases," or because it "confronts a set of facts that is materially indistinguishable from a decision of [the] Court but reaches a different result." *Brown v. Payton*, 544 U.S. 133, 141, 125 S. Ct. 1432, 1438, 161 L. Ed. 2d 334 (2005); *see* § 2254(d)(1).  The state court does not need to cite to Supreme Court cases or even be aware of them, "so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8, 123 S. Ct. 362, 365, 154 L. Ed. 2d 263 (2002).  If the state court decision is contrary to clearly established federal law, the federal habeas court must independently consider the merits of the petitioner's claim.

    If the state court decision is not contrary to clearly established federal law, the federal habeas court must then determine whether the state court "unreasonably applied" the governing legal principles set forth in the Supreme Court's cases.  § 2254(d)(1); *Williams*, 529 U.S. at 412–13, 120 S. Ct. at 1523.  The federal court defers to the state court's reasoning unless the state court's application of the legal principle was "objectively unreasonable" in light of the record the court had before it.  *Williams*, 529 U.S. at 409, 120 S. Ct. at 1521; *see Cullen v. Pinholster*, __ U.S. __, 131 S. Ct. 1388, 1400, 179 L. Ed. 2d 557 (2011) (holding new evidence introduced in federal habeas court has no bearing on § 2254(d)(1) review, rejecting dicta in *Holland v. Jackson*, 542 U.S. 649, 652, 124 S. Ct. 2736, 2737–38, 159 L. Ed. 2d 683 (2004) (per curiam)); *cf. Bell v. Cone*, 535 U.S. 685, 697 n.4, 122 S. Ct. 1843, 1851 n.4, 152 L. Ed. 2d 914 (2002) (declining to consider evidence not presented to state court in

determining whether its decision was contrary to federal law).  A state court's application of federal law is objectively unreasonable when the state court "identifies the correct legal rule from Supreme Court case law but unreasonably applies that rule to the facts of the petitioner's case" or "unreasonably extends, or unreasonably declines to extend, a legal principle from Supreme Court case law to a new context." *Brown*, 544 U.S. at 141, 125 S. Ct. at 1439.  However, a state court may "decline to apply a specific legal rule that has not been squarely established by [the Supreme Court]" without running afoul of the "unreasonable application" clause. *Knowles*, 129 S. Ct. at 1419.  Notably, even a state court's incorrect application of law will not warrant federal habeas relief unless it is also objectively unreasonable.  *See Harrington v. Richter*, __ U.S. __, 131 S. Ct. 770, 785-86, 178 L. Ed. 2d 624 (2011).

Section 2254(d) also allows federal habeas relief for a claim adjudicated on the merits in state court where that adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(2).  As with the "unreasonable application" clause, the Supreme Court applies the "objectively unreasonable" test to the state court's factual determination. *Miller-El v. Cockrell*, 537 U.S. 322, 324, 123 S. Ct. 1029, 1041, 154 L. Ed. 2d 931 (2003) (dictum).  The petitioner must advance clear and convincing evidence that the state court's factual determination was "objectively unreasonable" to rebut the presumption that the determination was correct. *Gill v. Mecusker*, 633 F.3d 1272, 1287 (11th Cir. 2011); *see* § 2254(e)(1).

The Eleventh Circuit Court of Appeals in *Gill* clarified how the federal habeas court should address the "unreasonable application of law" and the "unreasonable determination of facts" tests.  Mr. Gill's petition alleged he was denied his Sixth Amendment right to counsel.[8]  The Eleventh Circuit granted a limited Certificate of

---

[8]  Mr. Gill twice moved the trial court in pretrial hearings to allow him to waive his Sixth Amendment right to counsel.  *Gill*, 633 F.3d at 1275-1284; *see* U.S. Const. amend. VI.  The trial court denied the first motion, concluding that Mr. Gill's waiver of counsel was not knowing and intelligent. *Gill*, 633 F.3d at 1278; *see Faretta v. California*, 422 U.S. 806, 835, 95 S. Ct. 2525, 2541, 45 L. Ed. 2d 562 (1975) (accused must "knowingly and intelligently" waive representation).  It also denied the second motion,

Appealability to determine the precise issue of the validity of "summary affirmance by a state appellate court of a trial court's decision based on potentially flawed reasoning."  *Id.* at 1286.[9]

The court acknowledged the well-settled principle that summary affirmances, such as the Florida Second District Court of Appeal's, are presumed adjudicated on the merits and warrant deference.  *Id.* at 1288 (citing *Harrington*, 131 S. Ct. at 784-85 and *Wright v. Sec'y for the Dep't of Corr.*, 278 F.3d 1245, 1254 (11th Cir. 2002)).  "A judicial decision and a judicial opinion are not the same thing," and the Supreme Court has confirmed that determining whether the state court unreasonably applied the law or unreasonably determined the facts requires only a decision, not an opinion.  *Id.* at 1291 (citing *Harrington*, 131 S. Ct. at 784).  Yet, the Supreme Court has never squarely addressed whether under the "unreasonable application" test a federal habeas court "looks exclusively to the objective reasonableness of the state court's ultimate conclusion or must also consider the method by which the state court arrives at its conclusion."  *Id.* at 1289 (quoting *Neal v. Puckett*, 286 F.3d 230, 244-45 (5th Cir. 2002) (summarizing the emerging circuit split)).  The Eleventh Circuit court concluded that district courts must apply the plain language of § 2254(d) and answer the "precise question" raised in a claim based on the state court's ultimate legal conclusion, and should not "evaluate or rely upon the correctness of the state court's process of reasoning."  *Id* at 1291 (agreeing with the Fifth Circuit court in

---

but it allowed Mr. Gill to act as co-counsel for himself only for determining trial strategy.  *Gill*, 633 F.3d at 1284. He was convicted, and the Florida Second District Court of Appeal ("Second DCA") affirmed without opinion the trial court's denial of post-conviction relief.  *Id.* at 1284-85.  Mr. Gill then filed a petition in federal court, which petition the court denied with prejudice.  *Id.* at 1284-85.

[9]  The court reviewed Gill's claims that the federal habeas court erred in two respects.  First, Gill argued the habeas court erred by "failing to review on the merits the 'legally and factually unsupported rationale' articulated by the state trial court." 633 F.3d at 1288.  Second, Gill argued the habeas court's decision was *per se* erroneous because it "relied on a finding that the state court did not make."  *Id.* Gill averred the trial court denied relief by finding that Gill's waiver was not knowing and intelligent, while the federal district court denied relief by finding that Gill "never clearly and unequivocally" waived his right to counsel.  *Id.*

*Neal, supra*).  In short, the court stated, "the statutory language focuses on the result, not on the reasoning that led to the result."  *Id.*[10]

In light of *Gill*, the "unreasonable determination of facts" standard plays a limited role in habeas review because the district court considers the reasonableness of the trial court's fact finding only to the extent that the state court's ultimate conclusion relied on it.  *Id.* at 1292.  A federal habeas court can consider the full record before it to answer "the only question that matters[:]" whether the state court's decision was objectively unreasonable.  *Lockyer*, 538 U.S. at 64, 123 S. Ct. at 1168; *Gill*, 133 F.3d at 1290.

The Supreme Court recently summarized the meaning and function of habeas corpus in the federal system:

> Under §2254, a habeas court must determine what arguments or theories supported or . . . could have supported [ ] the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding of a prior decision of this Court.

*Harrington,* 131 S. Ct. at 786.  Federal habeas relief is precluded "so long as fairminded jurists could disagree on the correctness of the state court's conclusion."  *Id.* at 786 (internal quotations omitted).

The federal habeas court will take the final step of conducting an independent review of the merits of the petitioner's claims only if it finds that the petitioner satisfied AEDPA and § 2254(d).  *See Panetti v. Quarterman*, 551 U.S. 930, 953-54, 127 S. Ct. 2842, 2858-59, 168 L. Ed. 2d 662 (2007); *Jones v. Walker*, 496 F.3d 1216, 1228 (2007) (same).  The writ will not issue unless the petitioner shows that he is in custody "in violation of the Constitution or laws and treaties of the United States." 28 U.S.C. § 2254(a).  When performing its review under § 2254(d), the federal court must resolve all claims for relief regardless of whether habeas relief is granted or

---

[10]  Applying this analysis, the court rejected Gill's claim that the district court erred by relying on different grounds than the trial court because Gill's basic premise—the Second DCA's summary affirmance relied on the trial court's statements from the bench—was not dispositive.  *Id.* at 1288.

denied. *Clisby v. Jones*, 960 F.2d 925, 936 (11th Cir. 1992) (en banc); *see Puiatti v. McNeil*, 626 F.3d 1283, 1307 (11th Cir. 2010). The federal court must also bear in mind that state court factual determinations are presumed to be correct, and the petitioner bears the burden of rebutting that presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *see also Crawford v. Head*, 311 F.3d 1288, 1295 (11th Cir. 2002) (AEDPA provides for a "highly deferential standard of review" for factual determinations made by a state court); *Jackson*, 112 F.3d at 824-25 (noting petitioner has heavier burden to overcome the presumption of factual correctness). "If this standard is difficult to meet, that is because it was meant to be." *Harrington*, 131 S. Ct. at 786.

## OTHER CONTROLLING LEGAL PRINCIPLES

### Ineffective assistance of counsel.

Petitioner contends in some of his grounds for relief in this court that he was denied his constitutional right to the effective assistance of counsel. The Constitution provides "[i]n all criminal prosecutions, the accused shall enjoy the right. . .to have the Assistance of Counsel for his defence." U.S. Const. amend. VI. To prevail on a claim of ineffective assistance of counsel, the petitioner must prove: (1) "counsel's representation fell below an objective standard of reasonableness;" and (2) "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 677-678, 104 S. Ct. 2052, 2064, 80 L. Ed. 2d 674 (1984); *see also Berghuis v. Thompkins*, ___ U.S. ___, 130 S. Ct. 2250, 2264-65, 176 L. Ed. 2d 1098 (2010). Reasonableness of representation does not implicate what is possible, prudent, or even appropriate, but only what is "constitutionally compelled." *Chandler v. United States*, 218 F.3d 1305, 1313 (11th Cir. 2000) (citing *Burger v. Kemp*, 483 U.S. 776, 794, 107 S. Ct. 3114, 3126, 97 L. Ed. 2d 638 (1987)).

In evaluating counsel's performance, reviewing courts must indulge a strong presumption that counsel's conduct fell within the wide range of reasonable, professional assistance. *Chandler*, 218 F.3d at 1314. Courts must make "every

effort. . .to eliminate the distorting effects of hindsight" and must evaluate the reasonableness of counsel's performance "from counsel's perspective at the time." *Strickland*, 466 U.S. at 689, 104 S. Ct. at 2065; *see also, e.g., Chandler*, 218 F.3d at 1314 (the *Strickland* standard compels courts to "avoid second-guessing counsel's performance").  The Eleventh Circuit has summarized the standard and the burden:

> Even if many reasonable lawyers would not have done as defense counsel did at trial, no relief can be granted on ineffectiveness grounds unless it is shown that no reasonable lawyer, in the circumstances, would have done so.  This burden, which is petitioner's to bear, is and is supposed to be a heavy one.  And, "[w]e are not interested in grading lawyers' performances; we are interested in whether the adversarial process at trial . . . worked adequately."  *See White v. Singletary*, 972 F.2d 1218, 1221 (11th Cir. 1992).  Therefore, the cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between.

*Rogers v. Zant*, 13 F.3d 384, 386 (11th Cir. 1994); *see also, e.g., Waters v. Thomas*, 46 F.3d 1506, 1518 (11th Cir. 1995) (the test is not whether counsel could have done more); *Atkins v. Singletary*, 965 F.2d 952, 960 (11th Cir. 1992) (". . .the Constitution requires a good deal less than maximum performance.").

In order to meet the prejudice prong of the *Strickland* standard, petitioner must allege more than that the unreasonable conduct might have had "some conceivable effect on the outcome of the proceeding."  466 U.S. at 693, 104 S. Ct. at 2067; *see Marquard v. Sec'y for Dep't of Corr.*, 429 F.3d 1278, 1305 (11th Cir. 2005). Petitioner must show a reasonable probability exists that the outcome would have been different.  *Marquard*, 429 F.3d at 1305 (petitioner's burden under the prejudice prong is high); *Strickland*, 466 U.S. at 694, 104 S. Ct. at 2068.  In applying *Strickland*, the court may dispose of an ineffective assistance claim if petitioner fails to carry his burden on either of the two prongs.  *Strickland*, 466 U.S. at 697, 104 S. Ct. at 2069 ("If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice. . .that course should be followed.").

The *Strickland* standard exists to prevent petitioners from abusing the post-trial process by escaping rules of waiver or presenting new issues; it should be

"applied with scrupulous care" to protect the integrity of the adversary process. *Harrington*, 131 S. Ct. at 788. As it relates to habeas corpus applications, the Court emphasized:

> The standards created by *Strickland* and § 2254(d) are both "highly deferential," and when the two apply in tandem, review is "doubly" so. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard.

*Id.* at 788 (citations omitted); *Knowles*, 129 S. Ct. at 1420 (*Strickland* claims evaluated under § 2254(d)(1) require "doubly deferential" judicial review).

Finally, when a district court considers a habeas petition, the state court's findings of historical facts in the course of evaluating an ineffectiveness claim are subject to the presumption of correctness, while the performance and prejudice components are mixed questions of law and fact. *Strickland*, 466 U.S. at 698, 104 S. Ct. at 2070; *Collier v. Turpin*, 177 F.3d 1184, 1197 (11th Cir. 1999). "The pivotal question is whether the state court's application of the *Strickland* standard was unreasonable. "This [inquiry] is different from asking whether defense counsel's performance fell below *Strickland*'s standard." *Jones v. Sec'y, Dep't of Corr.*, 644 F.3d 1206, 1209 (11th Cir. 2011) (quoting *Harrington*, 131 S. Ct. at 785). Habeas claims of ineffective assistance of counsel require "doubly deferential" judicial review under §2254(d) and *Strickland*, and petitioners only rarely prevail on this ground. *See Rogers*, 13 F.3d at 386.

Exhaustion of state remedies and Procedural Default

Respondent contends some of Mr. Hinson's ground for relief are unexhausted (doc. 32). A petitioner defaults on an issue unless the petitioner first exhausts available state court remedies so the state has the "'opportunity to pass upon and

correct' alleged violations of its prisoners' federal rights." *Duncan v. Henry*, 513 U.S. 364, 365, 115 S. Ct. 887, 888, 130 L. Ed. 2d 865 (1995) (per curiam); *see* 28 U.S.C. § 2254(b)(1)(A) (applicant must exhaust available state court remedies); § 2254(b)(3) (state may rely on exhaustion requirement unless it expressly waives the right). *But see* § 2254(b)(2) (application may be denied on the merits even when applicant fails to exhaust state remedies).   To satisfy the exhaustion requirement, the petitioner must "fairly present" his claim in each appropriate state court, alerting that court to the federal nature of the claim.  *Duncan*, 513 U.S. at 365-66, 115 S. Ct. at 888; *see O'Sullivan v. Boerckel*, 526 U.S. 838, 845, 119 S. Ct. 1728, 1732, 144 L. Ed. 2d 1 (1999) (same).   This affords the state courts "one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process."  *O'Sullivan*, 526 U.S. at 845, 119 S. Ct. at 1732.

"Fair presentation" requires that, in each claim for relief, the petitioner include a reference to a specific federal constitutional guarantee and a statement of the facts that entitle the petitioner to relief.  *Picard v. Connor*, 404 U.S. 270, 278, 92 S. Ct. 509, 513, 30 L. Ed. 2d 438 (1971).  To satisfy the exhaustion requirement, the petitioner must present the same facts and claims in state court about which he petitions the federal court.  *Id.*  Appeals to a broad, general constitutional guarantee also fail to present the "substance" of such a claim to the state court.  *See Anderson v. Harless*, 459 U.S. 4, 7, 103 S. Ct. 276, 278, 74 L. Ed. 2d 3 (1982) (petitioner cited federal authority only by referring to a state court decision in which "the defendant. . . asserted a broad federal due process right to jury instructions that properly explain state law" (internal quotation marks omitted)).  A state prisoner's claim is not fairly presented if the state court "must read beyond a petition or a brief (or a similar document) that does not alert it to the presence of a federal claim in order to find material. . .." *Baldwin v. Reese*, 541 U.S. 27, 32, 124 S. Ct. 1347, 1351, 158 L. Ed. 2d 64 (2004).  However, when a petitioner squarely raises a federal constitutional claim in state court, the "failure of a state court to mention a federal claim does not mean the claim was not presented to it."  *Dye v. Hofbauer*, 546 U.S. 1, 3, 126 S. Ct. 5, 6-7,

163 L. Ed. 2d 1 (2005).  And, simply labeling the claim "federal" may be sufficient to fairly present the claim.  *Baldwin*, 541 U.S. at 32, 124 S. Ct. at 1351 (dictum).

The Eleventh Circuit requires specific reference to the United States Constitution and favors citations to federal cases.  *Zeigler v. Crosby*, 345 F.3d 1300, 1307-08 and n.5 (11th Cir. 2003) ("Cursory and conclusional sentences (unaccompanied by citations to federal law) . . . did not present to the Florida courts the federal claim asserted to us.").  This stricter standard requires the petitioner to differentiate a claim under the United States Constitution from one under a state constitution.  *Id.* at n.5; *McNair v. Hall*, 416 F.3d 1291, 1302-03 (11th Cir. 2005) ("a habeas applicant [must] do more than scatter some makeshift needles in the haystack of the state court record" (internal citations omitted)).  If state and federal constitutional law overlap in their applicability to the petitioner's claim, he must raise his issue in terms of the federal right in state court to obtain federal review of the issue.  *Duncan*, 513 U.S. at 366, 115 S. Ct. at 888; *see also Anderson*, 459 U.S. at 7 and n.3, 103 S. Ct. at 278 and n.3 (petitioner's citation to a state-court decision predicated solely on state law is probably insufficient to fairly apprise a reviewing court of a potential federal claim merely because the defendant in the cited state case advanced a federal claim).

A claim is procedurally defaulted and barred from federal review in two instances: (1) if it was raised in state court and rejected on the independent and adequate state ground of procedural bar or default; or (2) if it was not properly raised in state court and can no longer be litigated under state procedural rules.  *Coleman v. Thompson*, 501 U.S. 722, 734-35 and n.1, 111 S. Ct. 2546, 2557 and n.1, 115 L. Ed. 2d 640 (1991); *Bailey v. Nagle*, 172 F.3d 1299, 1302-03 (11th Cir. 1999); *see also Judd v. Haley*, 250 F.3d 1308, 1313 (11th Cir. 2001) (state court's rejection of petitioner's constitutional claim on state procedural grounds generally precludes subsequent federal habeas review of that claim).  Unless the federal court determines the state court "clearly and expressly" relied on independent and adequate state grounds, the

federal court may address the petition.[11]  *Coleman*, 501 U.S. at 735, 111 S. Ct. at 2557. However, when any future attempt to exhaust state remedies would be futile under the state's procedural default doctrine, the default is *per se* adequate state grounds independent of the federal question.  *Id.* at 735 n.1, 2557 n.1; *Harris v. Reed*, 489 U.S. 255, 263 n.9, 109 S. Ct. 1038, 1043 n.9, 103 L. Ed. 2d 308 (1989) (federal habeas court need not require a federal claim be presented to a state court if the state court would hold the claim procedurally barred).

The adequacy of a state procedural bar to the assertion of a federal question is itself a federal question.  *Lee v. Kemna*, 534 U.S. 362, 375, 122 S. Ct. 877, 885, 151 L. Ed. 2d 820 (2002).  To foreclose federal review, the state procedural bar must be firmly established and regularly followed, that is, not applied in an arbitrary or unprecedented fashion.  *Ford v. Georgia*, 498 U.S. 411, 423-24, 111 S. Ct. 850, 857, 112 L. Ed. 2d 935 (1991).  A state procedural bar is firmly established and regularly followed when the state has put litigants on notice of the rule, and the state has a legitimate interest in the rule's enforcement.  *Maples v. Allen*, 586 F.3d 879, 888 (11th Cir. 2009) (*citing* Lee, 534 U.S. at 385-88, 122 S. Ct. at 890-92)).

To overcome a procedural default so that the federal habeas court may reach the merits of a claim, the petitioner must show either "cause for the default and actual prejudice resulting therefrom," or a fundamental miscarriage of justice. *Kelley v. Sec'y for the Dep't of Corr.*, 377 F.3d 1317, 1345 (11th Cir. 2004); *High v. Head*, 209 F.3d 1257, 1261 (11th Cir. 2000).  Cause exists when an external impediment, such as governmental interference or the reasonable unavailability of the factual basis for the claim, prevented petitioner from raising the claim. *McCleskey v. Zant*, 499 U.S. 467, 497, 111 S. Ct. 1454, 1472, 113 L. Ed. 2d 517 (1991). To meet the miscarriage of justice exception, the petitioner must show that "a constitutional violation has probably resulted in the conviction of one who is

---

[11]  The "adequate and independent state grounds" rule applies equally to procedural and substantive state-law grounds.  *Lee v. Kemna*, 534 U.S. 362, 375, 122 S. Ct. 877, 885, 151 L. Ed. 2d 820 (2002).

actually innocent" because "it is more likely than not that no reasonable juror would have convicted him."  *Schlup v. Delo*, 513 U.S. 298, 327, 115 S. Ct. 851, 867, 130 L. Ed. 2d 808 (1995).  Further:

> [A] substantial claim that constitutional error has caused the conviction of an innocent person is extremely rare.  To be credible, such a claim requires [a] petitioner to support his allegations of constitutional error with new reliable evidence -- whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence -- that was not presented at trial.

*Id.*  In short, actual innocence claims opening the gate for the miscarriage of justice exception are summarily rejected in virtually every case.  *Id.*

<u>Deference to state court findings of fact</u>

Federal habeas courts defer to the state court's findings of fact, unless the petitioner shows by clear and convincing evidence that it was unreasonable.  *See* 28 U.S.C. § 2254(d)(2); § 2254(e)(1); *Callahan v. Hall*, 427 F.3d 897, 926 (11th Cir. 2005) ("§ 2254(d)(2) allows for relief where the state court adjudication 'resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.' § 2254(d)(2)."); *see also Rutherford v. Crosby*, 385 F.3d 1300, 1308 (11th Cir. 2004) (concluding that "[petitioner] has not shown by clear and convincing evidence that the Florida Supreme Court's factual finding . . . [wa]s unreasonable in light of the evidence in the state court record").  Under the AEDPA, the state court does not have to explicitly state its findings of fact.  *See Blankenship v. Hall*, 542 F.3d 1253, 1271-72 (11th Cir. 2008).  State court findings of fact can be implied from the opinion and the record when they are necessary to the Rule 3.850 court's rejection of a petitioner's claim.  *Id.*  These implicit findings are entitled to deference.  *Id.*  As explained in the Standard of Review, *supra*, the state court is not required to cite or be aware of the relevant Supreme Court precedent as long as its conclusion is not contradictory. *Early*, 537 U.S. at 8, 123 S. Ct. at 365.  A summary adjudication with a brief, or total

lack of, statement of reasons is still an adjudication on the merits. *Harrington*, 131 S. Ct. at 780, 784; *see Childers v. Floyd*, 642 F.3d 953, 968 (11th Cir. 2011) ("an 'adjudication on the merits' is best defined as any state court decision that does not rest solely on a state procedural bar.").

Under Eleventh Circuit precedent, the habeas court will "'look through' a summary decision to the 'last reasoned decision' on the issue." *McGahee v. Alabama Dep't of Corr.*, 560 F.3d 1252, 1262 n.12 (11th Cir. 2009) (quoting *Sweet v. Sec'y, Dep't of Corr.*, 467 F.3d 1311, 1317 (11th Cir. 2006)); *see also Ylst v. Nunnenmaker*, 501 U.S. 797, 802, 111 S. Ct. 2590, 2594, 115 L. Ed. 2d 706 (1991) (". . .the *Harris* presumption only applies after habeas court determines 'the relevant state court decision. . .fairly appear[s] to rest primarily on federal law or [is] interwoven with [federal] law.'") (quoting *Coleman v. Thompson*, 501 U.S. 722, 740, 111 S. Ct. 2546, 2559, 115 L. Ed. 2d 640 (1991)).

## PETITIONER'S GROUNDS FOR RELIEF

**Ground One        Deniel of competency hearing or evaluation.**

Mr. Hinson alleges the trial court erred in failing to conduct a competency hearing or order a mental evaluation based on Mr. Hinson's responses during a *Faretta*[12] hearing (doc. 1, p. 4).  At the March 25, 2008 hearing, Mr. Hinson stated he was "currently disabled for bipolar disorder and he had stopped taking his medication, psychological without a doctor's consent."  (*Id.* at 4).  Mr. Hinson contends he was incompetent to waive his right to counsel (*id.*).

---

[12] *Faretta v. California*, 422 U.S. 806, 95 S. Ct. 2525, 45 L. Ed. 2d 562 (1975) (a defendant has a Sixth Amendment constitutional right to conduct his own defense).  The trial court should make the defendant aware of the "dangers and disadvantages of self-representation, so that the record will establish that he knows he has "knowingly and intelligently" relinquished those benefits .  *Id.* at 835, 95 S. Ct. at 2541.  In Florida, a trial court is obligated to hold a *Faretta* hearing when the defendant makes an unequivocal request for self-representation.  *Muehleman v. State of Florida*, 3 So.3d 1149 (Fla. 2009).

**Exhaustion**

Respondent contends this claim is unexhausted because Mr. Hinson could have, but did not, raise the claim on direct appeal (doc. 32, p. 21).  It further states that to the extent Mr. Hinson raised the claim in his post-conviction motions, he raised it "in terms of state procedural grounds, not the U.S. Constitution[,]" and "[f]ederal habeas relief cannot be issued based on perceived errors of state law." (*Id.*).

Mr. Hinson's sole argument on direct appeal was that the trial judge erred in failing to conduct an adequate *Faretta* hearing.  His appeal squarely addressed the claim because it alleged the failure to inquire further into Mr. Hinson's mental competency or order an exam rendered the *Faretta* hearing inadequate.  He contended that:

> An inquiry under Faretta v. California, 422 U.S. 806 (1975) focuses primarily on a defendant's capacity to "voluntarily and intelligently" waive his constitutional right to counsel. Indiana v. Edwards, 128 S. Ct. 2379 (2008)[.] The determination as to a defendant's capacity to waive this right includes an examination of a defendant's "mental competency and mental capacity." Tennis v. State, 997 So.2d [(]2008)[.] In this case, the trial judge simply glossed over the information that raised serious questions about Mr. Hinson's mental competency to waive his right to a lawyer.  This makes the inquiry inadequate.  Petty v. State, 34 Fla. L. Weekly 265 (Fla. 1st DCA 2009); Flowers v. State, 976 So.2d 665 (Fla. 1st DCA 2008)[.]

> The Florida Supreme Court has decided that "we recognize that in certain instances a defendant may be precluded from exercising his or her right to proceed pro se after the court conducts a Faretta inquiry." Tennis, above.  This conclusion is required after Indiana v. Edwards, above.  "[T]he Constitution permits judges to take realistic account of the particular defendant's mental capacities by asking whether a defendant who seeks to conduct his own defense at trial is mentally competent to do so."

> This means an adequate Faretta inquiry must ask questions when the defendant himself raises the question of his competency during the hearing. . ..

> Although the judge had all of this information, he never inquired further nor did he order a competency exam.  This was error in making

an adequate determination that Mr. Hinson had the mental capacity to waive his right to a lawyer.  In addition, the judge had seen numerous court filings by Mr. Hinson.  The judge was often perplexed by what Mr. Hinson meant in those filings and a review of most of them demonstrate[s] they make no sense.  Although a defendant does not have to possess real legal skills to represent himself, <u>Godinez v. Moran</u>, 509 U.S. 389 (1993), these filings are supportive of the position that Mr. Hinson was not competent to waive his right to an attorney.  A judge must make a thorough and searching inquiry to decide whether a defendant has the mental capacity to waive a lawyer.  Mr. Hinson's disclosures about his mental illness; his failure to keep taking his medication; and the nonsensical court filings should have triggered more questioning and fact-finding about Mr. Hinson's capacity to represent himself.  <u>Smith v. State</u>, 956 So.2d 1288 (Fla. 4th DCA 2008); <u>Wilson v. State</u>, 724 So.2d 144 (Fla. 1st DCA 1998); <u>In Re Amendment to Fla. R. Cr. P. 3.111(d)(2)-(3)</u>, 719 So.2d 873 (Fla. 1998).

(Ex. D, p. 14).

The undersigned finds that Mr. Hinson adequately raised this claim in terms of his Sixth Amendment right to self-representation.  His brief on direct appeal cited to clearly established federal law.  His reply brief relied heavily on *Indiana v. Edwards*, 554 U.S. 164, 128 S. Ct. 2379, 171 L. Ed. 2d 345 (2008), which states:

That is to say, the Constitution permits States to insist upon representation by counsel for those competent enough to stand trial under *Dusky* but who still suffer from severe mental illness to the point where they are not competent to conduct trial proceedings by themselves.

554 U.S. at 178; 128 S. Ct. at 2388.  Mr. Hinson's claim is not articulate, but a review of the record shows he is raising the same claim he raised in state court, and that claim is a federal constitutional claim that is cognizable for federal habeas review. He claims the trial court should have inquired into his competency because of his disclosures; that in fact, his waiver was not "voluntary and intelligent" because he was not mentally competent; and the trial court could not allow Mr. Hinson to waive his Sixth Amendment right to counsel when he lacked the mental competency to

represent himself.   Thus, allowing Mr. Hinson to proceed *pro se* was unconstitutional.

While Mr. Hinson's post-conviction motions are irrelevant to this claim because trial court error is generally not appropriate for collateral review, they lend further support to the conclusion that Mr. Hinson intended to and did raise a federal constitutional claim.  In fact, Mr. Hinson raised this claim four more times by way of a Rule 3.850 motion, a Rule 3.800 motion, a state habeas corpus petition, and a state petition for writ of prohibition (*see* exs. U, V, DD, EE).[13]

**State Court Decision**

The First DCA *per curiam* affirmed the trial court's judgment and sentence without written opinion.  *Robert Lee Hinson, Jr. v. State of Florida*, 14 So.3d 1007 (Table) (*see* ex. H, dkt. July 13, 2009).

**Federal Review of State Court Decision**

Respondent argues that Mr. Hinson is not entitled to relief because: 1) he waived a mental competency evaluation in open court; 2) he stated he no longer suffered from depression; 3) his disclosure about being treated for bipolar disorder and discontinuing medication is insufficient to establish incompetence.  (Doc. 32, p. 22).  Respondent's arguments are not convincing.

First, the record shows Mr. Hinson filed a pre-trial "motion to be placed in mental hospital to be evaluated" on July 2, 2008 (ex. F, p. 137).  Mr. Hinson cited Rules 3.210 and 3.214, Florida Rules of Criminal Procedure, dealing with competence to stand trial and competence to proceed to sentencing.  At the time, Mr. Hinson was awaiting sentencing on case 402 (*see* ex. F, dkt. # 164).  On August 11, 2008, he orally withdrew his motion (ex. F, p. 158).  That he withdrew the motion in August 2008 is not relevant to determining whether the trial court erred in finding him competent to waive his right to counsel in March 2008, *prior* to trial.

---

[13]  The state court properly denied these claims for being raised incorrectly under Florida rules of procedure.

**Second, Mr. Hinson's response to the court's question "You are not depressed any now?" (ex. E, p. 91) during the *Faretta* hearing is not evidence that he was not <u>currently</u> suffering from bipolar disorder so that he was not "competent to waive" the right to assistance of counsel. *See Godinez v. Moran*, 509 U.S. 389, 401, 113 S. Ct. 2680, 2688 (1993) (The Supreme Court has used the phrase "competence to waive" as shorthand for "intelligent and competent waiver".).**

**Third, respondent's conclusion that Mr. Hinson's diagnosis is insufficient to show incompetence is irrelevant to Mr. Hinson's claim that the *trial judge* erred in failing to inquire into competency or order an evaluation. While Mr. Hinson's claim necessarily implies he was not competent to waive his right (because if he was deemed competent after the proper inquiry the result of the trial would not change), respondent's factual conclusion cannot substitute for a conclusion about the adequacy of the trial judge's decision under clearly established federal law.[14] The AEDPA requires a habeas court to defer to the state court's decision unless it is objectively unreasonable under clearly established federal law.**

---

[14] **The undersigned notes that the trial judge conducted a  second bare-bones *Faretta* inquiry at the June 9, 2008, status hearing:**

> **THE COURT:   Okay. All right. Let's take care of 1631 first. It is fairly unclear to me.  Mr. Hinson on March the 25th on some other cases, I think there were three other cases, I asked you a series of questions called a Faretta hearing and you responded to those questions.  Without me having to go through every bit of that, which takes about 15, minutes, 20 minutes or whatever, if I asked you - - do you remember the questions that I asked you on March the 25th?**
> **THE DEFENDANT:      Yeah, I remember.**
> **THE COURT:   Do you remember your responses?**
> **THE DEFENDANT:      Yes, sir, I remember.**
> **THE COURT:   If I asked you the same questions, would you respond in the same way?**
> **THE DEFENDANT:      Yes, sir.**
> **THE COURT:   Do you want to represent yourself on this new charge of passing a lottery ticket with the intent to defraud?**
> **THE DEFENDANT:      Yes, sir.**
> **THE COURT:   All right.  Let's take and just show that a Faretta hearing was held and the Court is relying upon the questions and answers that were given on March the 25th, '08 on his other three cases.**

**(Ex. E, pp. 126-27).**

The record shows that the state court's decision affirming the adequacy of the *Faretta* hearing is not objectively unreasonable.  "The Sixth and Fourteenth Amendments of [the] Constitution guarantee that a person brought to trial in any state or federal court must be afforded the right to the assistance of counsel before he can be validly convicted and punished by imprisonment." *Faretta v. California*, 422 U.S. 806, 807, 95 S. Ct. 2525, 2527, 45 L. Ed. 2d 562 (1975). The Sixth Amendment, however, also includes the right to self-representation.  422 U.S. at 831-32, 95 S. Ct. at 2539. The Supreme Court has held that, "[a]lthough a defendant need not himself have the skill and experience of a lawyer in order competently and intelligently to choose self-representation, he should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that he knows what he is doing and his choice is made with eyes open." *Id.* at 835, 95 S. Ct. at 2541 (internal quotations and citation omitted); *see also Patterson v. Illinois*, 487 U.S. 285, 298, 108 S. Ct. 2389, 2398, 101 L. Ed. 2d 261 (1988).  *Faretta* does not specify particular procedures to ensure that a defendant's decision is knowing and intelligent.  *Nelson v. Alabama*, 292 F.3d 1291, 1296-97 (2002).  In fact, the Supreme Court has implied that the trial judge's decision should be reviewed deferentially:

> The import of our decision in *Pate v. Robinson* [, 383 U.S. 375, 86 S. Ct. 836, 15 L. Ed. 2d 815 (1966)], is that evidence of a defendant's irrational behavior, his demeanor at trial, and any prior medical opinion on competence to stand trial are all relevant in determining whether further inquiry is required, but that even one of these factors standing alone may, in some circumstances, be sufficient. There are, of course, no fixed or immutable signs which invariably indicate the need for further inquiry to determine fitness to proceed; the question is often a difficult one in which a wide range of manifestations and subtle nuances are implicated. That they are difficult to evaluate is suggested by the varying opinions trained psychiatrists can entertain on the same facts.

*Drope v. Missouri*, 420 U.S. 162, 180, 95 S. Ct. 896, 908, 43 L. Ed. 2d 103 (1975).

In this case, the judge asked Mr. Hinson if he understood exactly what advantages he was giving up by representing himself including but not limited to

having the benefit of an attorney's expertise (ex. E, pp. 89-107).  In addition to asking whether he "understood", the judge asked Mr. Hinson to explain why he did not want an attorney:

> Q.     Okay.  Do you understand that it's almost always unwise to represent yourself in court?
> A.     Yes, sir.
> Q.     Do you believe that?
> A.     Always unwise to represent yourself in court?
> Q.     Yes.
> A.     Yes, sir.
> Q.     Well, why do you want to do it then if it's unwise?
> A.     Well, sometime it do you no good to get no public defender anyway 'cause they don't be representing you on your behalf anyway, you know.  I mean, they work for the State, so.
> Q.     So you think that because they are state employed they are not working in your best interest?
> A.     Yes, sir.
> Q.     What makes you think that?
> A.     Because of self experience, sir.  I have done that before, so.

(Ex. E, pp. 94-95).   The record shows Mr. Hinson's response is coherent and reasoned.

After the judge finished explaining the consequences of self-representation and repeatedly highlighted the severe disadvantage of self-representation, he asked questions to determine if Mr. Hinson was "competent to make a knowing and intelligent waiver of counsel." (Ex. E, p. 103).  The judge inquired about his age, literacy, education, drug use, physical impairments, and mental illness.  He also inquired about the 2001 bipolar diagnosis, Mr. Hinson's medication, and his reason for discontinuing medication.  Mr. Hinson stated he did not think the medication helped him.  (Ex. E, pp. 103-105).  Based on his answers, the trial judge found his waiver knowing and intelligent (ex. E, p. 107).

Unlike reviewing courts, the trial judge is in the unique position of observing the petitioner firsthand.  While Mr. Hinson's prior medical diagnosis is relevant to the

competency inquiry, it is not determinative. The trial judge's opinion that Mr. Hinson was capable of representing himself, taking into account all the attendant circumstances, is reasonable.  Furthermore, the judge appointed standby counsel to answer Mr. Hinson's questions (ex. E, pp. 106-07).

Mr. Hinson argued in his brief on appeal that the judge's confusion and seeming frustration with the number and content of his filings supported the conclusion that he was not competent to waive counsel (ex. D, pp. 13-14).  Mr. Hinson filed multiple pre-trial motions.  In the majority of the motions, Mr. Hinson argued two points: 1) evidence or statements should be suppressed for substantive reasons (e.g. because he is not guilty); and 2) the charging instrument is defective. (*See* ex. F, pp. 22-40).  The trial judge asked him to clarify his motions at the June 9, 2008 hearing (ex. E, p. 131-38).  As to his motions to suppress:

> THE DEFENDANT:        They got the wrong truck.  See that's not, that's not the evidence they got that it belonged to them.  They've got the wrong truck.  That's what I'm trying to tell you.  They got the wrong truck.  They've got me driving an S-10 Chevrolet.  I wasn't driving an S-10 Chevrolet.
> THE COURT:        You're saying they have - - the description of the vehicle in the police report is wrong?
> THE DEFENDANT:        Yeah.
> THE COURT:        And that's the whole point of everything you're saying?
> THE DEFENDANT:        Uh-huh.

(Ex. E, p. 134).  He also explained the purpose of his motions to dismiss:

> THE COURT:        He's also filed a motion to dismiss.  He claims lack of evidence and insufficient probable cause in the indictment and information is vague and indefinite.
> What do you want to say on that, Mr. Hinson?
> THE DEFENDANT:        They got the evidence wrong.  I mean, like I said before, it wasn't me.  They got the trucks mixed up, got the property mixed up and they got me charged with more than one statute on the document of the information.  They've got me charged with more than one statute on the document of the information.  It is not certain.
> THE COURT:        Sir, they've got you charged with grand theft.

**THE DEFENDANT:**        Yeah,  but  look  how  many statutes they've got me charged with.

(Ex. E,  p. 137).   Disregarding  incorrect  terminology,  Mr. Hinson's  motions  are comprehensible, and his oral explanations are coherent.

The state court's ruling did not result in a decision that was contrary to, or involved  an  unreasonable  application  of,  clearly  established  federal  law,  or  was based  on  an  unreasonable  determination  of  the  facts  in  light  of  the  evidence presented.  28 U.S.C. § 2254(d)(1), (2);  *Williams, supra*.  Mr. Hinson is not entitled to federal habeas relief on this claim, and the writ should not issue.

**Ground Two**        **Ineffective  assistance  of  trial  counsel  for  failing  to  object  to  a** **_Faretta_ hearing.**

Mr. Hinson's second ground for relief alleges his trial counsel was ineffective for failing to object to or otherwise stop his *Faretta* hearing (doc. 1, p. 4).  He states that he informed the trial judge that he was currently disabled because he suffered from Bipolar Disorder and he had stopped taking his medication without consulting a medical professional (*id*.).  He claims his counsel, Steve Bayhi, failed to object "to have  Defendant  evaluated."   (*Id*.).   He  concludes  he  would  have  been  found incompetent had he been evaluated (*id*.).  Mr. Hinson raised this as Ground Three of his motion for post-conviction relief filed pursuant to Rule 3.850, Florida Rules of Criminal Procedure (ex. U, p. 7).

**Exhaustion**

Respondent contends this claim is unexhausted because Mr. Hinson did not allege any prejudice resulting from defense counsel's inaction despite the trial court's order allowing him to amend the pleading.  (Doc. 32, p. 22) (citing ex. U, pp. 13-14, 18-19).  Respondent concludes Mr. Hinson did not fairly present the claim to the state court and is procedurally barred from federal habeas relief (doc. 32, p. 22).

The Rule 3.850 court struck Mr. Hinson's motion as facially insufficient for failing to state how defense counsel's action prejudiced him (ex. U, p. 18).  The court

allowed him a reasonable time to amend his motion (ex. U, p. 19).  Mr. Hinson did not amend his motion.  Resultantly, the Rule 3.850 court denied it as facially insufficient in its August 25, 2010, order (ex. U, pp. 13-14).  The Eleventh Circuit has held that when the state court denies a claim an insufficiently pled, it is a rejection of the claim on the merits, not a ruling that the claim is procedurally barred.  *See Owen v. Sec'y for Dep't of Corr.*, 568 F.3d 894, 912-13 (11th Cir. 2009).  Therefore, the Rule 3.850 order and corresponding First DCA opinion is a denial on the merits.

### State Court Decision

The Rule 3.850 court struck the motion as facially insufficient because it did not state how defense counsel's failure to object or "stop" the *Faretta* inquiry to obtain a competency hearing for Mr. Hinson prejudiced him (ex. U, p. 18).  He did not file an amended motion.  The court reviewed several motions together and denied his claim for ineffective assistance of counsel on the same grounds, citing its earlier order (ex. U, p. 13-14).

### Federal Review of State Court Decision

Respondent alternatively contends Mr. Hinson cannot show how his counsel's failure to ensure he was evaluated for mental competency, "whether to represent himself or to stand trial[,]" would have resulted in a different outcome at trial (doc. 32, p. 23).  Respondent's argument is persuasive.  Even if Mr. Hinson's counsel had objected to the trial judge's determination that he was competent to waive his right to counsel and somehow obtained a mental competency evaluation, there is no evidence that a physician would have concluded that he was incompetent.  And even if he was found incompetent to waive his right to an attorney, he still must show that having counsel would have probably resulted in a different outcome at trial.  Mr. Hinson failed to meet the prejudice prong of the *Strickland* test.  It is unnecessary to evaluate the deficient performance prong.  *Strickland*, 466 U.S. at 697, 104 S. Ct. at 2069.

The state court's ruling did not result in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, or was

based on an unreasonable determination of the facts in light of the evidence presented.  28 U.S.C. § 2254(d)(1), (2); *Williams, supra*.  Mr. Hinson is not entitled to federal habeas relief on this claim, and the writ should not issue.

**Ground Three**      "Denial of equal protection of the law" when the trial court failed to offer a plea agreement .

Mr. Hinson's third ground for relief alleges the trial court "failed to offer him a plea agreement [as] opposed to his co-defendants", who he states received non-prison sentences (doc. 1, p. 5).  He avers if he had received a plea agreement he would not have gone to trial.  He contends the trial court denied him equal protection of the law (*id.*).  Mr. Hinson raised this claim as Ground Four of his Rule 3.850 motion for post-conviction relief (ex. U, p. 8).

Exhaustion

Mr. Hinson did not raise this claim on direct appeal (*see* ex. D).  Instead, he raised it for the first time in his Rule 3.850 motion for post-conviction relief (ex. U, p. 13).  The Rule 3.850 court denied the claim as procedurally barred.  Citing Florida precedent, it stated that claims that "could have been brought on direct appeal are procedurally barred in postconviction proceedings."  (Ex. U, p. 13).  However, Mr. Hinson did not include this ground in his appeal of the denial of the motion for post-conviction relief, so the claim was not presented to the state appellate court for review.  Therefore, it is not exhausted.  (*See* ex. LL).  In fact, upon review of the record, it does not appear that Mr. Hinson raised this claim in any appeal (*see, e.g.,* exs. D, GG, II, LL, MM).

Furthermore, Mr. Hinson's claim amounts to a sentencing challenge, which is an issue of state law.  A state's interpretation of its own laws or rules provides no basis for federal habeas corpus relief because it does not involve a question of a federal constitutional nature.  *See Carrizales v. Wainwright*, 699 F.2d 1053, 1055 (11th

Cir. 1983); *Llamas–Almaguer v. Wainwright*, 666 F.2d 191 (5th Cir.1982).[15]   The Eleventh Circuit Court of Appeals stated that "[i]n the area of state sentencing guidelines in particular, we consistently have held that federal courts can not review a state's alleged failure to adhere to its own sentencing procedures." *Branan v. Booth*, 861 F.2d 1507, 1508 (11th Cir.1988).  "This limitation on federal habeas review is of equal force when a petition, which actually involves state law issues, is 'couched in terms of equal protection and due process.'" *Branan*, 861 F.2d at 1508 (quoting *Willeford v. Estelle*, 538 F.2d 1194, 1196-98 (5th Cir.1976)).  Mr. Hinson's claim is merely couched in terms of a federal constitutional violation. *Willeford*, 538 F.2d at 1198.

For these reasons, the claim is unexhausted and procedurally defaulted in the state court.[16]  It is too late for Mr. Hinson to return to the state courts to cure the default, and the claims are therefore defaulted in this court.  Mr. Hinson is not entitled to federal habeas relief, and the writ should not issue.


**Ground Four**          <u>Ineffective assistance of appellate counsel for failing to appeal the trial court's denial of motions.</u>

Mr. Hinson's fourth ground for relief alleges his appellate counsel was ineffective for failing to appeal the trial court's denial of his motion to suppress and motion to dismiss (doc. 1, p. 5).  He argues if his appellate counsel had appealed these motions "he would have been released from custody, due to trial court lacked jurisdiction to sustain a felony conviction. Based on a denial of due process on June 9, 2008. By misleading Defendant." (Doc. 1, p. 5).  Mr. Hinson raised this as Ground One of his state petition for writ of habeas corpus (ex. Q, p. 3).  Mr. Hinson filed a motion to dismiss the charge in case 402 for lack of evidence, probable cause, and

---

[15]  Former Fifth Circuit decisions issued before October 1, 1981, are binding precedent on the Eleventh Circuit.  *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981).

[16]  The undersigned also notes that Mr. Hinson failed to cite any case law, state or federal, to support his claim.

because the "indictment and information [are] so vague, indistinct, and indefinite as to mislead the accused and embarrass him in preparation of a defense."  (Ex. F, p. 22).[17]  He also filed a motion to suppress evidence, including:  the impound receipt for the truck he allegedly drove; the name of the person who towed the truck; the receipt for the scrap metal he was alleged to have stolen and sold; the name of the person he sold it to; and the identity of an anonymous caller (ex. F, p. 26).  He then filed a "motion for suppression of exculpatory evidence" seeking to suppress the inventory of the impounded truck because he claimed he was driving a different truck (ex. F, p. 28).   The motion requested an order "from the public records" describing the truck and who towed it for deposition purposes (*id.* at 29).[18]

The trial judge heard arguments on the motions on June 9, 2008 (ex. E, pp. 132-40).  As stated in the undersigned's analysis of Ground One, Mr. Hinson filed the motions to "prove" he was driving a different truck than the one described in the information and to argue that he was charged with too many statutes (*id.*).  The trial judge denied the motions (ex. E, pp. 133,134,135, 137-38; ex. F, dkt. nos. 74-75, 77, 80).  The judge stated that the portions of the motions requesting information would be satisfied through the State's discovery (*see e.g.*, ex. E, p. 136; ex. F, dkts. nos. 78-79).

<u>Exhaustion</u>

Respondent concedes that Mr. Hinson raised this issue in state court, "thus exhausting it for federal habeas corpus purposes."  (Doc. 32, p. 23).

---

[17]  Mr. Hinson's pleading is titled "motion to suppress the vagueness and indistinct[ness] of F[lorida] S[tatute]/offense in question. . .." (Ex. F, p. 36) (listing the statutory sections included in the information).

[18]  Mr. Hinson's pleading is titled "motion to suppress exculpatory evidence favorable to the accused/ and public records information" on May 8, 2008, requesting the relief (ex. F, p. 33).

**State Court Decision**

The First DCA *per curium* denied the petition on the merits (ex. R).

**Federal Review of State Court Decision**

This court gives deference to the First DCA's adjudication of Mr. Hinson's petition on the merits so long as its conclusion is not contradictory to clearly established federal law.  *See Harrington*, 131 S. Ct. at 780, 784; *Wright*, 278 F.3d at 1254-55.  The clearly established federal law governing ineffective assistance of appellate counsel is the same as set forth in *Strickland*, *supra*:  counsel rendered deficient performance, and the deficient performance prejudiced the petitioner.  Appellate counsel does not perform deficiently for failing to raise every non-frivolous ground for appeal.  *Smith v. Robbins*, 528 U.S. 259, 288, 120 S. Ct. 746, 765, 145 L. Ed. 2d 756 (2000).  Indeed, "the practice of 'winnowing out' weaker arguments on appeal, so to focus on those grounds that are more likely to prevail, is the "hallmark of effective appellate advocacy."  *Hargrove v. Solomon*, 227 Fed. Appx. 806, 808 (11th Cir. 2007) (unpublished opinion) (citing *Smith v. Murray*, 477 U.S. 537, 536, 106 S. Ct. 2661, 2667, 91 L. Ed. 2d 434 (1986)).  Furthermore, for the petitioner to be prejudiced, he must show a reasonable probability that the outcome of the *appeal* would be different, not the outcome of the trial on remand.  *Clark v. Crosby*, 335 F.3d 1303, 1312 n.9 (11th Cir. 2003).

While ineffective assistance of appellate counsel is a question of federal law, federal habeas courts defer to the state court's decision regarding state law when the answer turns on whether counsel should have raised a state law issue.  *Alvord v. Wainwright*, 725 F.2d 1282, 1291 (11th Cir. 1984) (superceded by statute on other grounds).  Mr. Hinson's motions are based on state evidentiary law.  The June 9, 2008, hearing reveals he was actually seeking to prove his innocence through his motions to suppress by showing that he was not driving the truck described in the police report.  The trial judge noted that ". . .you don't suppress exculpatory evidence.  You try to suppress incriminating evidence." (Ex. E, p. 134).  Some of Mr. Hinson's other motions sought information that would be revealed through the

discovery process (*see, e.g.,* ex. E, p. 136).  Furthermore, Mr. Hinson's motion to dismiss the charges because they were indefinite or uncertain was without merit. Mr. Hinson was charged with violating Sections 812.014(1)(a) and (b), Florida Statutes.  (Ex. F, p. 3).  These sections describe the crime of theft.  Sections 812.014(3)(a) and (c), also listed in the information (*id.*), specify the theft as petit theft and indicate an enhanced penalty for third and subsequent theft convictions.  In response to Mr. Hinson's motion, the trial judge directed him to look at the statutes and stated:  "Doesn't one of them go to the penalties?" (Ex. E, p. 137).  Appellate counsel could reasonably determine raising the denial of Mr. Hinson's motions on appeal was not likely to be successful.  Furthermore, Mr. Hinson has not shown that the outcome of his appeal would likely have been different had his attorney raised these issues.

The state court's ruling did not result in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, or was based on an unreasonable determination of the facts in light of the evidence presented.  28 U.S.C. § 2254(d)(1), (2); *Williams, supra*.  Mr. Hinson is not entitled to federal habeas relief on this claim, and the writ should not issue.


**Ground Five**          <u>Trial court error for failing to hold a *Richardson* hearing.</u>

Mr. Hinson's fifth ground for relief alleges the trial court failed to conduct a *Richardson*[19] hearing to investigate why the State failed to call a witness, Ronnie McGraw (doc. 1, p. 5A).  He states that the prosecuting attorney knew Mr. McGraw was a material witness because he was the neighbor and "anonymous caller" who caused Mr. Hinson's arrest (*id.*).  He argues:

> This witness was importantly needed to allow the Defendant to receive
> a fair and impartial trial.  As this was the only witness to identify

---

[19] *Richardson v. State*, 246 So.2d 771 (Fla. 1971) (The State's failure to furnish a defendant with the name of a  witness who has relevant information to the defendant or his defense warrants reversal of conviction on appeal if the failure resulted in harm or prejudice to the defendant.)

defendant and call the police.  Defendant needed this witness to prove his innocence.

(*Id.*).

Mr. Hinson raised this issue as Ground One in his motion for post-conviction relief, filed pursuant to Rule 3.850, Florida Rules of Criminal Procedure.  (Ex. U, p. 4).  In the motion, Mr. Hinson elaborated that Mr. McGraw was "included" in the State's discovery but was not subpoenaed to testify at trial (ex. U, p. 4).  He argued that Mr. McGraw would have testified that Mr. Hinson was not driving the vehicle detailed in the police report (*id.* at 5).  Furthermore, he stated that he alerted the trial judge at the June 9, 2008, hearing "that an additional witness was needed–such as the caller."  (*Id.*).

Exhaustion

Respondent contends this ground is unexhausted because Mr. Hinson could have, but did not, raise the issue on direct appeal (doc. 32, p. 25).  Therefore, it was not fairly presented to the state courts and is barred from federal habeas review (*id.*).

State Court Decision

The Rule 3.850 court denied Mr. Hinson's request for relief on this ground, stating that "[c]laims that could have been brought on direct appeal are procedurally barred in postconviction proceedings."  (Ex. U, p. 13) (citing *Willacy v. State of Florida*, 967 So.2d 131, 141 (Fla. 2007); *Hodges v. State of Florida*, 885 So.2d 338, 366 (Fla. 2004)).

Federal Review of State Court Decision

Neither Mr. Hinson's federal habeas petition nor his state motion for post-conviction relief alleges a violation of federal constitutional law.  He asserts for the first time in his response that he was denied "due process of the law."  (Doc. 40, p. 22).  A petitioner cannot simply couch a claim in terms of a federal constitutional violation.  *Willeford*, 538 F.2d at 1198.  Even if Mr. Hinson alleges a federal constitutional violation, the claim is unexhausted because he did not present it to the state court.  *See Baldwin*, 541 U.S. at 32, 124 S. Ct. at 1351.  Assuming his state

petition can be read to include a federal constitutional claim, the state court expressly rejected it on independent and adequate state procedural grounds, so it is procedurally defaulted from federal review. *Coleman*, 501 U.S. at 734-35 and n.1, 111 S. Ct. at 2557 and n.1.

It is well-settled Florida law that issues that were or should have been raised on direct appeal are procedurally barred from collateral review. *See Green v. State of Florida*, 975 So.2d 1090, 1105 (Fla. 2008); *Miller v. State of Florida*, 926 So.2d 1243, 1260 (Fla.2006) ("[A] claim that could and should have been raised on direct appeal is procedurally barred.") (citing *Davis v. State of Florida*, 928 So.2d 1089, 1120 (Fla. 2005); *Duckett v. State of Florida*, 918 So.2d 224, 234 (Fla. 2005); *Robinson v. State of Florida*, 913 So.2d 514, 524 n. 9 (Fla. 2005)). The record shows Mr. Hinson failed to raise this claim on direct appeal.

Mr. Hinson's argument in his post-conviction motion was based on Florida law and did not present a federal claim to the state court for resolution. It is too late for him to return to the state courts to cure the default and the claims are therefore defaulted in this court. His bare assertion that he is actually innocent is insufficient to excuse the default. (*See* doc. 40, pp. 22, 24). Mr. Hinson is not entitled to federal habeas relief, and the writ should not issue.

**Ground Six  <u>Sections 812.014(1)(a) and (b), (3)(a) and (c) are unconstitutional.</u>**

Mr. Hinson's final ground for relief alleges the theft statute on which his conviction rests is unconstitutional because it lacks an enacting clause (doc. 1, p. 5A). He raised this claim in a state motion to correct illegal sentence, filed pursuant to Rule 3.800(a), Florida Rules of Criminal Procedure (ex. V, p. 1). He concludes the trial court lacked subject matter jurisdiction because the statute "is no law at all". (*See* ex. V, p. 3). Mr. Hinson raised the same claim via: a petition for writ of habeas corpus directed to the Florida Supreme Court (ex. W); a petition for writ of

prohibition directed to the Florida Supreme Court (ex. Y); and a petition for writ of prohibition directed to the First DCA (ex. AA).[20]

### Exhaustion

Respondent contends this ground is unexhausted because Mr. Hinson could have, but did not, raise the issue on direct appeal (doc. 32, p. 26).  Therefore, it was not fairly presented to the state courts and is barred from federal habeas review (*id.*).

### State Court Decision

The Rule 3.800 court denied the claim as "plainly malicious."  (Ex. V, p. 42) (quoting *McCutcheon v. State of Florida*, 44 So.3d 156, 160 (Fla. 4th DCA 2010)).  The Florida Supreme Court transferred the petition to the Circuit Court of Jackson County (ex. Z), which dismissed the petition (*see* case no. 2010-CA-827).

### Federal Review of State Court Decision

As in Ground Five, Mr. Hinson has not claimed a violation of federal constitutional law.  The instant petition (and numerous state petitions) alleges only a violation based on Florida law.  Therefore, this claim is not cognizable on federal habeas review.  Even assuming the ground presented a federal constitutional claim, the Rule 3.800 court rejected the basis of the claim as meritless.  This court defers to the state court's determination that the Florida statute is not unconstitutional.  Accordingly, there can exist no federal constitutional violation, and Mr. Hinson's federal claim (assuming he raised one) is also without merit.  Mr. Hinson is not entitled to federal habeas relief on this claim, and the writ should not issue.

### CONCLUSION

The undersigned has carefully reviewed the transcripts of hearings, record on direct appeal, post-conviction motions and petitions, orders, and all submissions in this proceeding.  Mr. Hinson's Grounds One through Six are either unexhausted and

---

[20] Mr. Hinson voluntarily dismissed the petition with the First DCA (*see* ex. BB).  In a separate order, the First DCA sanctioned Mr. Hinson for repeatedly filing meritless motions (ex. CC).

defaulted from federal review or without merit, and he is not entitled to federal habeas relief.

### CERTIFICATE OF APPEALABILITY

Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."  If a certificate is issued, "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)."  Rule 11(a), Rules Governing Section 2254 Cases. A timely notice of appeal must still be filed, even if the court issues a certificate of appealability.  Rule 11(b), Rules Governing Section 2254 Cases.

The undersigned finds no substantial showing of the denial of a constitutional right.  28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483-84, 120 S. Ct. 1595, 1603-04, 146 L. Ed. 2d 542 (2000) (explaining how to satisfy this showing) (citation omitted).   Therefore, it is recommended that the court deny a certificate of appealability in its final order.

The second sentence of Rule 11(a) provides:  "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue."  If there is an objection to this recommendation by either party, that party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation.

Accordingly, it is respectfully RECOMMENDED:

1.       That the 28 U.S.C. § 2254 petition for writ of habeas corpus (doc. 1), challenging the conviction and sentence in *State of Florida v. Robert Lee Hinson, Jr.* in the Circuit Court of Escambia County, Florida, case no. 08-0402, be DENIED and the clerk be directed to close the file.

2.       That a certificate of appealability be DENIED.

**At Pensacola, Florida, this 25th day of October, 2011.**

/s/ *Miles Davis*

**MILES DAVIS
UNITED STATES MAGISTRATE JUDGE**

### NOTICE TO PARTIES

**Any objections to these proposed findings and recommendations must be filed within fourteen days after being served a copy hereof.  Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.  A copy of any objections shall be served upon any other parties.  Failure to object may limit the scope of appellate review of factual findings.  *See* 28 U.S.C. § 636; *United States v. Roberts*, 858 F.2d 698, 701 (11th Cir. 1988).**